# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| FTX TRADING LTD., MACLAURIN INVESTMENTS LTD., F/K/A ALAMEDA VENTURES LTD., AND WEST REALM SHIRES SERVICES, INC.,<br><br>Plaintiffs,<br><br>-against-<br><br>LAYERZERO LABS LTD., ARI LITAN, AND SKIP & GOOSE LLC,<br><br>Defendants. | Adv. Pro. No. 23-50492-JTD |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANT LAYERZERO LABS LTD.
TO PRODUCE DOCUMENTS AND TO MAKE TWO OF ITS
OFFICERS AND MANAGING AGENTS AVAILABLE FOR DEPOSITIONS**

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Pursuant to Federal Rule of Civil Procedure 37, made applicable pursuant to Federal Rules of Bankruptcy Procedure 7001 and 7037, plaintiffs FTX Trading Ltd., Maclaurin Investments Ltd. ("Alameda Ventures") and West Realm Shires Services, Inc. (collectively, "Plaintiffs") respectfully submit this motion to compel defendant LayerZero Labs Ltd. ("LayerZero") to produce relevant, responsive documents that Plaintiffs have requested and to make available for depositions Ryan Zarick and Caleb Banister, both of whom are founders, officers and managing agents of LayerZero.

## INTRODUCTION AND RELEVANT BACKGROUND

1. ***The Avoidable Transactions***.  This adversary proceeding arises from a series of avoidable fire-sale transactions entered into on the eve of the filing of these Chapter 11 cases.  On November 7, 2022—only days before the Debtors filed these Chapter 11 cases on November 11 and 14, 2022, and after the FTX Group's precarious financial position had already become public—LayerZero demanded that Alameda Research Ltd. ("Alameda Research"), the corporate parent of plaintiff Alameda Ventures, immediately repay a $45 million loan.  Compl. ¶ 7.  Given its dire financial condition, Alameda Research was not in a position to pay the $45 million demanded by LayerZero.  Instead, LayerZero forgave the $45 million loan in exchange for Alameda Ventures entering into the following three agreements, which provided value to LayerZero far in excess of $45 million:

    a.    **Share Transfer Agreement**:  Pursuant to this agreement, Alameda Ventures transferred to LayerZero its 4.92% equity stake in LayerZero, which Alameda Ventures had acquired earlier in 2022 for more than $70 million.  Based on LayerZero's then-most recent fundraising round, Alameda Ventures' 4.92% stake was worth nearly $150 million.  Compl. ¶ 60.

        b.      **Cancellation and Rescission Agreement and Mutual Release**: Pursuant to this agreement, Alameda Ventures canceled and rescinded warrants entitling it to receive (i) approximately 2.5% of the total supply of all STG tokens (a token launched by LayerZero in early 2022) and (ii) approximately 4.92% of the total supply of ZRO tokens (a token LayerZero launched in June 2024). Compl. ¶ 61. In so doing, Alameda Ventures gave up its rights to purchase millions of dollars' worth of STG and ZRO tokens for a de minimis amount. *Id.*

        c.      **Token Purchase Agreement**: Pursuant to this agreement, Alameda Ventures agreed to sell back to LayerZero, for a price of $10 million, additional STG tokens that Alameda Ventures had purchased from LayerZero for $25 million only a few months earlier. Although this sale was not completed prior to the imposition of the automatic stay—LayerZero did not pay for the tokens, and Alameda Ventures did not transfer them—LayerZero continues to assert that it is entitled to purchase these tokens for $10 million and has submitted a claim to do so in the Chapter 11 cases.[2] Compl. ¶ 62.

    2.    LayerZero walked away from these transactions (the "Fire-Sale Transactions") a huge winner—obtaining hundreds of millions in value in exchange for forgiving a loan of only $45 million—to the great detriment of the Debtors and their creditors. Plaintiffs have asserted claims for intentional and constructive fraudulent transfers against LayerZero pursuant to 11 U.S.C. § 548.[3]

---

[2] Plaintiffs seek to disallow this claim in this adversary proceeding. *See* Compl. ¶¶ 142-144.

[3] Plaintiffs also have asserted claims for preferential transfers pursuant to 11 U.S.C. § 547 against all Defendants.

3. ***The Requested Documents.*** Plaintiffs have served requests for documents concerning the LayerZero equity and tokens, and the Fire-Sale Transactions. *See* Ex. 1; Ex. 2.[4] As relevant to this Motion, Plaintiffs' requests seek:

    a.    Documents concerning sales or valuations of LayerZero equity and tokens, created during the period June 8, 2021 (the date LayerZero was incorporated) through November 14, 2023, including related communications; and

    b.    Documents concerning the Fire-Sale Transactions, created during the period June 8, 2021 through September 8, 2023 (the date the Complaint in this adversary proceeding was filed).

4. Both categories of documents (the "Requested Documents") are directly relevant to Plaintiffs' actual and constructive fraudulent transfer claims, and to LayerZero's purported defense pursuant to 11 U.S.C. § 548(c) that it received the transfers in good faith. *See* Defs.' Answer to Pls' Compl. ¶¶ 153, 154. LayerZero has nonetheless refused to make complete productions of the Requested Documents.

5. First, although LayerZero has produced certain documents relating to sales or valuations of LayerZero *equity*, it has produced only a small handful of documents concerning sales or valuations of LayerZero *tokens*. Moreover, it has refused to produce any *communications*

---

[4] Citations herein to "Ex. __" are to exhibits attached to the *Declaration of Christopher J. Dunne in Support of Plaintiffs' Motion to Compel Defendant LayerZero Labs Ltd. to Produce Documents and to Make Two of Its Officers and Managing Agents Available for Depositions*, filed concurrently herewith. The specific requests at issue on this Motion are Request Nos. 6-19, 22, 24-30, 31-33, 44, and 45 in *Plaintiffs' First Request for Production of Documents to Defendants*, Ex. 1, and Request No. 48 in *Plaintiffs' Second Request for the Production of Documents to Defendants*, Ex. 2. *Defendants' Responses and Objections to Plaintiffs' First Set of Requests for Production of Documents* and *Defendants' Responses and Objections to Plaintiffs' Second Set of Requests for Production of Documents* are attached as Ex. 3 and 4, respectively.

-3-

concerning sales or valuations of LayerZero equity or tokens. LayerZero contends that communications have "zero probative value" because the "[a]ctual executed [sale] agreements" are the "best evidence" of value. Ex. 5; *see also* Ex. 6. But LayerZero may not properly refuse to produce documents concerning the value of the transferred equity and tokens simply because it believes there is "better" evidence available.

6. Second, LayerZero has refused to produce any documents (other than limited agreements and trading records) dated after November 14, 2022. Ex. 6. LayerZero has asserted that the probative value of post-petition documents is "reduc[ed] to zero" because "this case concerns certain specific pre-petition transfers that were, by definition, completed pre-petition." *Id*. This position also lacks merit. Documents (including internal communications among LayerZero personnel) concerning the Fire-Sale Transactions, the outsized value that LayerZero received in exchange for forgiving a $45 million loan, and other matters addressed in the Complaint, are relevant and discoverable if they concern pre-petition events, even if they were created post-petition.

7. Notably, LayerZero has not even attempted to argue that making a complete production of the Requested Documents would impose undue burden. Nor would there be any basis for an undue burden argument. To date, Defendants have produced fewer than 7,000 documents and have produced virtually no documents from the key November 2022 period, raising serious concerns about their preservation of relevant materials.[5]

8. ***The Requested Depositions***. Plaintiffs have also noticed the depositions of Ryan Zarick, a LayerZero co-founder and managing agent and its Chief Technology Officer

---

[5] Plaintiffs have noticed a 30(b)(6) deposition of LayerZero concerning its policies and practices for retention and collection of documents, and reserve all rights to seek appropriate remedies for any spoliation of evidence.

("CTO"), and Caleb Banister, also a LayerZero co-founder and managing agent and its Principal Engineer. Zarick and Banister are both U.S. citizens living in Vancouver, British Columbia, Canada. LayerZero previously indicated that Zarick and Banister could sit for depositions in Seattle, Washington, Ex. 7, but now refuses to make them available at all, asserting that their depositions are not appropriate because (i) Caroline Ellison testified during her deposition in this adversary proceeding that she did not know them, and (ii) both individuals reside in Canada, Ex. 8. Neither is a valid ground for LayerZero's refusal to produce these witnesses for depositions.

9. Whether Ms. Ellison knew Zarick and Banister has no bearing on whether Plaintiffs are entitled to take their depositions. LayerZero cannot seriously dispute that Zarick and Banister possess relevant, discoverable information. Both are co-founders and senior officers of LayerZero. Both were involved in LayerZero's fundraising efforts, and both personally sold equity to Alameda Ventures during LayerZero's fundraising rounds. And LayerZero itself has conceded that Zarick and Banister possess relevant and discoverable information: (i) LayerZero included Zarick and Banister as custodians for its document productions and has produced e-mails and other documents from and concerning Zarick and Banister; (ii) LayerZero stated in its Initial Disclosures that Zarick is "likely to have discoverable information relating to the business activities and records, transactions at issue, and the Defendants' corporate structure," *Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1)* at 2, Ex. 9; and (iii) LayerZero stated in verified interrogatory responses that Zarick was "involved in LayerZero's Series A and Series B fundraising rounds on behalf of LayerZero," *Defendants' Responses and Objections to Plaintiffs First Set of Interrogatories*, Response No. 1, Ex. 10.

10. Moreover, the fact that Zarick and Banister reside in Canada does not excuse LayerZero from making them available for depositions. As officers and managing agents

of LayerZero, whom LayerZero controls, they are precisely the types of witnesses whom courts routinely require corporate parties in litigation to make available for depositions, regardless of their place of residence.  LayerZero was the recipient of the avoidable fraudulent transfers and obligations at issue in this adversary proceeding.  In addition, it has filed five claims in the Chapter 11 cases and has submitted to this Court's jurisdiction.[6]  LayerZero cannot properly refuse to make its senior personnel with relevant knowledge available for depositions.

## LEGAL STANDARD

11. Under Rule 26 of the Federal Rules, a party may take discovery concerning "any nonprivileged matter that is relevant to any party's claim or defense [that is] proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  "Rule 26 is liberally construed in favor of disclosure because 'relevance is a broader inquiry at the discovery stage than at the trial stage.'" *AgroFresh Inc.* v. *Essentiv LLC*, 2018 WL 9578196, at *2 (D. Del. Dec. 11, 2018) (citation omitted).

12. "Motions to compel discovery are governed by Federal Rule of Civil Procedure 37, made applicable pursuant to Federal Rules of Bankruptcy Procedure 7001 and 7037." *In re Anderson News, LLC*, 615 B.R. 45, 50 (Bankr. D. Del. 2020).  Courts compel discovery "unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *In re NewStarcom Holdings, Inc.*, 514 B.R. 394, 400 (Bankr. D. Del. 2014).

13. "Under Rule 30(b)(1), an officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a notice of deposition." *Campbell* v.

---

[6] LayerZero filed Claim No. 85218 against Alameda Research; Claim No. 85231 against Alameda Ventures; Claim Nos. 85245 and 85334 against FTX Trading Ltd.; and Claim No. 85302 against West Realm Shires Financial Services Inc.

*Sedgwick Detert, Moran & Arnold*, 2013 WL 1314429, at *12 (D.N.J. Mar. 28, 2013). To determine whether a particular employee is a "managing agent" of a corporate party, and thus may be deposed by notice to the corporate party, courts look to several factors, including:

> 1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; 4) the general responsibilities of the individual respecting the matters involved in the litigation, and; 5) whether the individual can be expected to identify with the interests of the corporation.

*Sugarhill Records Ltd.* v. *Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985) (citation and emphasis omitted). The "paramount test" for determining whether a corporate party may be compelled to produce a witness is the fifth factor, *i.e.*, "the witness's likely 'identification with the interests of the employer.'" *Calderon* v. *Experian Sols., Inc.*, 287 F.R.D. 629, 632 (D. Idaho 2012) (citation omitted). "These same rules apply to witnesses located overseas." *Inventus Power* v. *Shenzen Ace Battery*, 339 F.R.D. 487, 508 (N.D. Ill. 2021) (quoting *Calderon*, 287 F.R.D. at 631).

14. Once the party propounding discovery—whether by document requests or deposition notices—has demonstrated relevance, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *In re Allied Sys. Holdings, Inc.*, 2015 WL 6874790, at *4 (Bankr. D. Del. Nov. 9, 2015) (citation omitted).

**ARGUMENT**

A.   **The Court Should Order LayerZero To Produce the Requested Documents.**

15.   Courts have "broad discretion" under Rule 37 to ensure "a plaintiff [has] a full opportunity to adduce evidence in support of the cognizable claims set out in [the] complaint." *In re ML-Lee Acquisition Fund II, L.P.*, 151 F.R.D. 37, 41 (D. Del. 1993) (quoting *McLaughlin v. Copeland*, 455 F. Supp. 749, 753 (D. Del. 1978), *aff'd*, 595 F.2d 1213 (3d Cir. 1979)).  There can be no serious dispute that documents and testimony concerning sales and valuations of LayerZero equity and tokens and the Fire-Sale Transactions are relevant to the allegations and claims asserted in the Complaint in this adversary proceeding, as well as LayerZero's purported defenses.

16.   The value of the interests that Alameda Ventures transferred in the Fire-Sale Transactions goes directly to an element of Plaintiffs' constructive fraudulent transfer claim.  *See* 11 U.S.C. § 548(a)(1)(B) (allowing debtor to avoid transfer or obligation if, among other things, debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation").  It also relates directly to LayerZero's purported defense that it took the transferred assets "in good faith" pursuant to 11 U.S.C. § 548(c).  *See* Defs.' Answer to Pls' Compl. [D.I. 20] ¶¶ 153, 154.  LayerZero's communications regarding sales or valuations of LayerZero equity and tokens are no less relevant—and are likely even more probative—than the sales agreements or valuation documents themselves.  *See Geoshack Canada Co.* v. *Hendriks*, 2020 WL 3288394, at *4 (S.D. Oh. June 18, 2020) (ordering production of "[a]ll communications and documents regarding or reflecting the net book value of" defendant's shares of company); *Perfect Form Mfg. LLC* v. *United States*, 142 Fed. Cl. 778, 786 (Fed. Cl. 2019) (compelling production of communications about sales of archery equipment because they were "germane" to issue of whether sales "occurred at fair market prices" and bore on "pricing and pricing methodology").

17. Moreover, the fact that documents may have been created after the petition date does not render them irrelevant. *See, e.g., E3 Biofuels, LLC v. Biothane, LLC*, 2012 WL 2523048, at *2-4 (D. Neb. June 29, 2012) (granting motion to compel post-petition discovery that was "critical to [the defendant's] defense" and "could also reveal information about other factors" relating to the defendant's defenses); *Medline Indus., Inc.* v. *Andens of Illinois, Inc.*, 1990 WL 19979, at *5-6 (N.D. Ill. Feb. 27, 1990) (ordering production of post-petition documents where party alleged that financial arrangement between two entities indicated that they were not independent). This is particularly true with respect to documents relating to pre-petition events, such as documents that would shed light on Defendants' knowledge at the time of, and motivations for entering into, the Fire-Sale Transactions.

18. Having demonstrated that the Requested Documents are relevant, Plaintiffs are entitled to receive them so long as "the burden or expense of the proposed discovery [does not] outweigh its likely benefit." Fed. R. Civ. P. 26(b)(1). Producing documents that concern subjects central to the claims and defenses at issue and that are in the possession, custody or control of the party opposing discovery is clearly proportional to the needs of the case. *In re Energy Future Holdings Corp.*, 513 B.R. 651, 656-57 (Bankr. D. Del. 2014) ("Information can be relevant even if it only leads to other relevant information."); *In re Anderson News, LLC*, 615 B.R. 45, 53 (Bankr. D. Del. 2020) (where a "discovery request meets the Rule 26 requirements . . . in the context of the issue presently before the Court, the request is neither overly broad nor unduly burdensome"). And during the parties' conferrals on these document production issues, LayerZero has only half-heartedly suggested a burden argument, but has not attempted to quantify any supposed burden associated with producing the Requested Documents. The Court should order LayerZero to complete its production of the Requested Documents.

**B.     The Court Should Order LayerZero To Produce Mr. Zarick and Mr. Banister for Depositions.**

19.     Zarick and Banister are co-founders and high-ranking officer-employees of LayerZero, and both possess relevant information.  Zarick signed the master loan agreement underlying the $45 million loan that LayerZero forgave as part of the Fire-Sale Transaction, he was involved in LayerZero's fundraising efforts, and he personally sold LayerZero equity in secondary market sales, including one that took place just a few days before the Fire-Sale Transactions.  *See, e.g.*, Ex. 11; Ex. 12; Ex. 13; Ex. 14.  Shortly after the Fire-Sale Transactions took place, Zarick sent a letter to LayerZero investors touting the Fire-Sale Transactions as a huge success for LayerZero.  *See* Ex. 15; Compl. ¶ 10.

20.     Moreover, LayerZero represented in its Initial Disclosures that Zarick is "likely to have discoverable information relating to the business activities and records, transactions at issue, and the Defendants' corporate structure," Ex. 9 at 2, and its interrogatory answers identified Zarick as "involved in LayerZero's Series A and Series B fundraising rounds on behalf of LayerZero." Ex. 10 at Response No. 1.

21.     Banister is also a LayerZero co-founder and senior officer.  He was involved in the financing of the $45 million dollar loan to Alameda, and he personally sold equity to Alameda Ventures and others during LayerZero's fundraising rounds.  Ex. 16; Ex. 17; Ex. 12; Ex. 18.  Banister's sales of equity show that he has knowledge about the valuation of LayerZero equity.  Banister also sent communications the day before LayerZero called the $45 million loan about the looming collapse of FTX, which suggest, contrary to its defense, that LayerZero did not take the transferred assets in good faith.  *E.g.*, Ex. 19.  And given Banister's involvement in sales of equity, further discovery is likely to uncover additional evidence of Banister's involvement in LayerZero's fundraising efforts.

22. In addition, LayerZero has produced hundreds of documents in this litigation (out of the mere 7,000 documents they have produced in total) that Zarick and Banister sent or received, including documents relating to the LayerZero team's visits to the FTX Group's headquarters in the Bahamas. *E.g.*, Ex. 20.

23. Under Rule 30(b)(1), an "officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a deposition notice." *In re Benicar (Olmesartan) Prods. Liab. Litig.*, 2016 WL 5817262, at *3 (D.N.J. Oct. 4, 2016). Once noticed, the corporate party employing that officer, director or managing agent must make him available for a deposition. *See Inventus Power*, 339 F.R.D. at 507-08. Zarick and Banister—the CTO and Principal Engineer of LayerZero, respectively—are officers of LayerZero, so LayerZero must produce them for depositions. *See, e.g.*, *Saperstein* v. *Palestinian Auth.*, 2009 WL 10667908, at *7 (S.D. Fla. Dec. 31, 2009) (company's "high ranking official[s]" are "officers" for purposes of Rule 30).

24. Even if they were not officers of LayerZero (and they are), Zarick and Banister are clearly meet the "managing agent" standard. "[T]he question of whether a particular person is a 'managing agent' is to be answered pragmatically, on an ad hoc basis, considering the facts of the particular case." *In re Lithium Ion Batteries*, 2015 WL 5440789, at *5 (N.D. Cal. Sept. 15, 2015) (alteration in original). The burden of establishing managing agent status is a "modest one." *Calderon*, 287 F.R.D. at 633. "At the discovery stage, 'all doubts are to be resolved in favor of the party seeking discovery.'" *Elasticsearch, Inc.* v. *Floragunn GMBH*, 2021 WL 1753796, at *2 (N.D. Cal. May 4, 2021) (citation omitted). Thus, "it is not required that all factors work in favor of finding the proposed deponent to be a managing agent," *Botell* v. *United States*, 2013 WL

-11-

360410, at *5 (E.D. Cal. Jan. 29, 2013), and a "close question . . . should be resolved in favor of allowing the deposition." *Elasticsearch*, 2021 WL 1753796, at *2 (citation omitted).

25. Here, it is not a "close question" that Zarick and Banister are LayerZero managing agents, so Plaintiffs readily satisfy their "modest burden." At least four of the five factors courts consider when determining managing agent status—"whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters," "whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party," "the general responsibilities of the individual respecting the matters involved in the litigation," and "whether the individual can be expected to identify with the interests of the corporation"—demonstrate that Zarick and Banister are managing agents of LayerZero. *See Sugarhill Records*, 105 F.R.D. at 170.

26. That Zarick and Banister reside in Canada does not change the managing agent analysis. Courts regularly compel corporate parties to make their employees residing outside the United States available for depositions. *See, e.g.*, *Inventus Power*, 339 F.R.D. at 509 (compelling U.S.-style depositions of eight of defendants' managing agents whom all resided in China); *Symantec Corp.* v. *Acronis, Inc.*, 2013 WL 503612, at *4 (N.D. Cal. Feb. 8, 2013) (granting motion to compel U.S.-style depositions of managing agents residing in Russia even though they "cannot be deposed in Russia due to Russian law").

27. Further, LayerZero has not asserted that it would be unduly burdensome to produce Zarick and Banister for depositions. Nor could they; LayerZero has already agreed to produce Bryan Pellegrino, another LayerZero officer who resides in Canada, for a deposition in Seattle, Washington, and LayerZero previously indicated that Zarick and Banister could also sit for depositions in Seattle. *See* Ex. 7. Plaintiffs are willing to work with LayerZero to identify

mutually agreeable dates and locations for these depositions. The Court should order LayerZero to make Zarick and Banister available.

### CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 7026-1

28. Plaintiffs' counsel hereby certifies that they have in good faith conferred or attempted to confer with counsel for defendant LayerZero in a reasonable effort to resolve the matters set forth herein without Court action. Before the Motion was filed, the parties tried to resolve and/or limit matters through conferences and various correspondence, as reflected above and in the accompanying Declaration, but no agreement was reached as to the matters in this Motion.

### CONCLUSION

29. For all of the foregoing reasons, Plaintiffs respectfully request that the Court order LayerZero to produce the Requested Documents and make Ryan Zarick and Caleb Banister available for depositions.

| | |
|---|---|
| Dated: December 5, 2024<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew B. McGuire*<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>     mcguire@lrclaw.com<br>     brown@lrclaw.com<br>     pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br><br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Christopher J. Dunne (admitted *pro hac vice*)<br>Jacob M. Croke (admitted *pro hac vice*)<br>125 Broad Street<br>New York, New York 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail:<br>     gluecksteinb@sullcrom.com<br>     dunnec@sullcrom.com<br>     crokej@sullcrom.com<br><br>*Counsel for Plaintiffs* |